COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Beales, Callins and Senior Judge Clements
Argued at Richmond, Virginia


TRAVIS AARON BALL

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0632-23-2                      JUDGE DOMINIQUE A. CALLINS
                                                    JUNE 18, 2024

COMMONWEALTH OF VIRGINIA


               FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                             Claire G. Cardwell, Judge

           Paul C. Galanides for appellant.

           Matthew P. Dullaghan, Senior Assistant Attorney General (Jason S.
           Miyares, Attorney General, on brief), for appellee.


       The trial court found Travis Aaron Ball in violation of the conditions of his partially

suspended life sentence for capital murder, revoked his suspended sentence, and sentenced him to

incarceration for life.  Ball contends that the trial court erred in admitting certain evidence during his

revocation hearing.  We find no error and affirm the trial court's judgment.

                                       BACKGROUND[1]

       In revocation appeals, "[t]he evidence is considered in the light most favorable to the

Commonwealth, as the prevailing party below." *Jacobs v. Commonwealth*, 61 Va. App. 529, 535

(2013).

---

       * This opinion is not designated for publication.  *See* Code § 17.1-413(A).

       [1] "Although parts of the record are sealed, this appeal requires unsealing certain portions
to resolve the issues raised by [Ball].  To the extent that certain facts are found in the sealed
portions of the record, we unseal those portions only as to those specific facts mentioned in this
opinion." *Khine v. Commonwealth*, 75 Va. App. 435, 442 n.1 (2022).  "The rest remains sealed."
*Id.*

On September 27, 2018, Ball entered a guilty plea under *Alford v. North Carolina*, 400 U.S. 25 (1971),[2] to capital murder of Virginia State Police Special Agent Michael Walter ("Special Agent Walter"). The trial court sentenced Ball to life imprisonment. The trial court suspended Ball's sentence conditioned upon him serving 36 years and that he be of good behavior and not violate any laws while incarcerated or after release.

Upon the Commonwealth's motion, the trial court issued an order on October 6, 2022, for Ball to show cause why his suspended sentence should not be revoked. At a March 10, 2023 revocation hearing, the trial court received evidence that on October 5, 2022, the Circuit Court of Richmond County convicted Ball for malicious wounding of a fellow inmate and sentenced Ball to ten years of imprisonment with five years suspended. Additionally, on January 4, 2023, the Circuit Court of Stafford County convicted Ball of attempted malicious wounding while part of a mob and conspiracy, and sentenced him to 20 years of imprisonment with 5 years suspended.

During the revocation hearing, the Commonwealth introduced an excerpt of a video recorded by the body worn camera ("BWC") of another officer capturing the minutes before and after Ball shot Special Agent Walter. Rejecting Ball's contention that the BWC recording was irrelevant to the revocation proceedings, the trial court noted that Ball's *Alford* guilty plea did not acknowledge guilt for the murder of Special Agent Walter, but only acknowledged that the evidence was sufficient to prove him guilty. The trial court also found that the BWC recording provided context for portions of the original sentencing transcript that Ball sought to admit into evidence, which contained expert testimony about Ball's psychological condition at the time of the shooting and specifically referred to the BWC recording.

---

[2] "An *Alford* guilty plea allows 'criminal defendants who wish to avoid the consequences of a trial to plead guilty by conceding that the evidence is sufficient to convict them, while maintaining that they did not participate in the acts constituting the crimes.'" *Ellis v. Commonwealth*, 68 Va. App. 706, 708 n.1 (2018) (quoting *Carroll v. Commonwealth*, 280 Va. 641, 644-45 (2010)).

Ball also moved to exclude as irrelevant a recording of a video call from Rappahannock Regional Jail, during which Ball and other inmates danced and flashed gang hand signs in front of the camera. During the call, another inmate identified Ball as the person who "killed the trooper," and Ball made hand signals resembling a gun. The trial court overruled Ball's objection, finding that the recording was relevant to demonstrate Ball's lack of potential for rehabilitation and to "whether he presents a danger to others in the future."

The Commonwealth also introduced a portion of the transcript from Ball's original sentencing hearing for the capital murder conviction. At that hearing, Jaime Walter ("Jaime"), the victim's wife, read a victim impact statement describing the impact of her husband's death upon her and her three children. During the revocation hearing, the Commonwealth introduced an additional victim impact statement from Jaime, in which she described the impact upon her and her children of Ball's continued violence to others and his lack of remorse. The Commonwealth also introduced evidence that Ball's arm was tattooed with Roman numerals corresponding to the date he killed Special Agent Walter.

The trial court found Ball in violation of his suspended sentence based upon his new felony convictions. Before imposing sentence, the trial court noted "the brazenness with which the defendant has violated the conditions of his suspended sentence by committing new acts of violence." The trial court also observed that, since the day of the murder, Ball had "committed repeated acts of extreme premeditated violence." In addition, the trial court observed that Ball had "publicly glorified and shown pride in the commission of th[e] murder" and "has failed to be deterred in his violence even while being incarcerated." The trial court revoked Ball's suspended sentence and imposed the remaining life sentence in its entirety. This appeal followed.

ANALYSIS

I. Video Evidence

Ball argues that the trial court abused its discretion in admitting the BWC recording and the video call into evidence during the revocation hearing because they were irrelevant to the trial court's revocation decision. Generally, "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence." Va. R. Evid. 2:401. "All relevant evidence is admissible" except as otherwise excluded by constitution, statute, rule of court, or other evidentiary principles. Va. R. Evid. 2:402(a). Additionally, the standards for admissibility of evidence at a revocation hearing are more relaxed than at a criminal trial because a revocation hearing "is not part of a criminal prosecution[.]" *Saunders v. Commonwealth*, 62 Va. App. 793, 807 (2014) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)), *aff'd*, No. 140507, 2015 Va. Unpub. LEXIS 18 (Feb. 26, 2015). "A sentencing court is vested with wide discretion in . . . revocation proceedings and 'formal procedures and rules of evidence are not employed.'" *Turner v. Commonwealth*, 278 Va. 739, 742 (2009) (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 789 (1973)). The process of revocation hearings "should be flexible enough to consider evidence . . . that would not be admissible in an adversary criminal trial." *Davis v. Commonwealth*, 12 Va. App. 81, 84 (1991) (quoting *Morrissey*, 408 U.S. at 489).

"We review a court's decision to admit evidence at sentencing for an abuse of discretion." *Meekins v. Commonwealth*, 72 Va. App. 61, 68 (2020). "Circuit court judges are vested with broad discretion in admitting evidence, and can be expected to exercise that discretion to exclude evidence that does not aid the court in the sentencing phase." *Harvey v. Commonwealth*, 65 Va. App. 280, 286-87 (2015) (citation omitted). "Such weighing is left to the discretion of the trial court and will not be disturbed on appeal, absent an abuse of discretion." *Id.* at 287 (quoting *Teleguz v.*

- 4 -

*Commonwealth*, 273 Va. 458, 482 (2007)). "In determining the admissibility of evidence at a sentencing hearing, 'the circumstances of the individual case will dictate what evidence will be necessary and relevant, and from what sources it may be drawn.'" *Meekins*, 72 Va. App. at 68 (quoting *Beck v. Commonwealth*, 253 Va. 373, 384 (1997)).

Here, the BWC recording of Ball shooting Special Agent Walter was plainly relevant to the revocation proceedings because the trial court had to modify Ball's suspended sentence for that particular offense. Moreover, the trial court found that the BWC recording was relevant because Ball did not expressly acknowledge guilt through his *Alford* guilty plea but admitted only that the evidence was sufficient to convict him. Finally, the trial court found that the BWC recording was relevant because it provided context for portions of the sentencing transcript that Ball sought to admit into evidence during the revocation hearing, which contained expert testimony regarding Ball's psychological condition at the time of the shooting and specifically referred to the BWC recording. In light of these considerations, we hold that the trial court did not abuse its discretion in admitting the BWC recording.

Nor do we find error in the admission of the video call. As the trial court observed, Ball "glorified" his criminal behavior in the call. When another inmate referred to Ball as the person who killed the special agent, Ball made signs with his hands in acknowledgement and, as the trial court found, demonstrated "pride" in committing the murder. Through his exchanges with the recipient of the call and with the other inmates, Ball demonstrated his lack of remorse for his crime and lack of potential for rehabilitation—both relevant to the trial court's determination of whether and how to modify Ball's suspended sentence. Thus, the trial court did not abuse its discretion in admitting the video call.

II. Victim Impact Statement

Citing Code § 19.2-299.1, Ball argues that the trial court erred in admitting Jaime's additional victim impact statement at the revocation hearing.[3]  Under Code § 19.2-299.1, a presentence report shall, with the consent of the victim, include a victim impact statement.  Code § 19.2-299.1 further provides, in relevant part:

> The Victim Impact Statement may be considered by the court in determining the appropriate sentence.  A copy of the statement prepared pursuant to this section shall be made available to the defendant or counsel for the defendant without court order at least five days prior to the sentencing hearing.  The statement shall not be admissible in any civil proceeding for damages arising out of the acts upon which the conviction was based.

While Code § 19.2-299.1 does categorically exclude victim impact statements "in any civil proceeding for damages arising out of the acts upon which the conviction was based," the statute contains no proscription against the admissibility of victim impact statements during revocation hearings.  Moreover, while "a revocation hearing is not a stage of a criminal prosecution . . . such revocation hearing is nevertheless a criminal proceeding." *Green v. Commonwealth*, 263 Va. 191, 195-96 (2002).  Thus, we find no error in the trial court's decision to admit the victim impact statement at the revocation hearing.

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*

---

[3] On appeal, Ball also argues that "how [his] subsequent convictions impacted the victim of a previous crime was not relevant of any material issue in the revocation hearing."  Yet Ball did not make this argument to the circuit court.  For this reason, we deem the argument waived under Rule 5A:18 of the Rules of the Supreme Court of Virginia. *See Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc) ("Under this rule, a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal.").